Judgment rendered May 20, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,870-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

DAMION CAIN                                           Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. F-2022-123

Honorable Will R. Barham, Judge

* * * * *

LOUISIANA APPEALS AND                        Counsel for Appellant
WRIT SERVICE
By:  Remy V. Starns
     Mitchael A. Mitchell
     Douglas D. Brown

PENNY WISE DOUCIERE                          Counsel for Appellee
District Attorney

K. DOUGLAS WHEELER

AMANDA M. WILKINS

Assistant District Attorneys

* * * * *

Before STONE, COX, and THOMPSON, JJ.

**THOMPSON, J.**

Damion Cain was convicted by a jury of home invasion, unauthorized use of a motor vehicle, and simple assault, after slashing his ex-girlfriend's tires on her car, entering her home without her permission, threatening her with a knife, placing his hands around her neck, and forcefully removing some of her clothing.  After the home invasion, he fled in his ex-girlfriend's deceased stepfather's vehicle without permission.  Cain now argues the State improperly withheld evidence of the victim's criminal history until the trial commenced, that as a result he was prevented from properly confronting his accuser, and that he received ineffective assistance of counsel.  For the reasons that follow, we affirm his convictions.

## FACTS AND PROCEDURAL HISTORY

On April 25, 2022, deputies of Richland Parish responded to a domestic complaint lodged by Nikedra Straughter. Upon their arrival, Straughter reported that Damion Cain had forcibly entered her home, grabbed her by the neck, assaulted her, and attempted to compel sexual intercourse against her will. Cain had also slashed the tires of her vehicle, and later absconded with her deceased stepfather's truck without permission, and then refused to return to her.

The State charged Cain with home invasion, attempted second degree rape, battery of a dating partner with strangulation, and unauthorized use of a movable exceeding $1,000 in value. Trial commenced on August 31, 2023.

At trial, the jury was presented with testimony from Straughter, who described in detail Cain's forced entry, his possession of knives, his physical aggression, kicking open the door and forcing his way in the home, and his

stated intent to "take" what was not offered as he pushed her against the wall by the neck, shoved her onto the couch, and stripped off her shirt and bra. The State supplemented this account with testimony from the responding law enforcement officers, physical evidence, photographs, the recorded 911 call by Straughter, and Cain's own recorded admissions that he had, in fact, been present, destroyed property, and kicked in the door.

Deputy Joel Weatherly and Deputy Trey Spenser were the deputies dispatched to the scene to investigate. Deputy Weatherly testified at trial that he observed the damaged door during his investigation and confirmed that the tires on Straughter's vehicle were damaged and flat. Richland Parish Sheriff's Office Investigator Kerri Moroni interviewed Cain about the incident. The recorded interview was admitted into evidence and played for the jury. During Cain's interview, he readily admitted to being at Straughter's residence that day, slashing her tires, and kicking down the door. Cain claimed that he and Straughter were never in an intimate relationship and that she owed him money for work he did around her home.

The jury acquitted Cain of attempted second degree rape but found him guilty of home invasion, unauthorized use of a motor vehicle, and the lesser offense of simple assault. Cain was sentenced to 30 years at hard labor on the home invasion conviction (the statutory maximum sentence), two years at hard labor on the unauthorized use of a motor vehicle conviction (the statutory maximum sentence), and 90 days in the parish jail on the simple assault conviction, all sentences to run concurrently. After subsequent habitual offender proceedings, Cain received enhanced concurrent sentences, including 60 years at hard labor for home invasion, which forms the basis of

a separate appeal by Cain. He now appeals his convictions and original sentences, alleging three assignments of error.

**DISCUSSION**

**Assignment of Error No. 1**: **The trial court erred in allowing the State to withhold the victim's criminal history until the morning of trial, in violation of *Brady v. Maryland* and the defendant's right to due process.**

Cain first contends that the State violated *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to disclose the victim's criminal history until the morning of trial. This argument fails under close scrutiny. Louisiana Code of Criminal Procedure article 717 explicitly provides that the State is not required to disclose a witness's criminal history until the commencement of trial. Cain urges this Court to disregard the plain language of statute in favor of a more amorphous notion of "fairness."

*Brady* requires the disclosure of material exculpatory evidence. It does not require the State to anticipate every strategic preference of defense counsel, and failure to disclose beyond the requirements of La. C. Cr. P. art. 717 does not constitute a constitutional violation. What defense counsel may consider as "technical" compliance with the timing of disclosure of *Brady* material is full compliance. The disclosure here occurred precisely when the statute permits, at the commencement of trial, and as such is the end of the inquiry.

The record contains ample independent evidence of Cain's guilt: his own admissions, physical damage to the residence, corroborating photographs, and contemporaneous communications. The notion that the jury's verdict hinged entirely upon undisclosed impeachment material is implausible. Accordingly, this assignment of error is without merit.

**Assignment of Error No. 2: The trial court erred in restricting cross-examination of the State's sole witness regarding her pending criminal charges in Ouachita Parish, in violation of the defendant's rights under the Confrontation Clause of the Sixth Amendment and La. Const. art. I, § 16.**

Cain next asserts that the trial court impermissibly restricted his right to confront the witness against him by limiting inquiry into her pending charge in Ouachita Parish. The Sixth Amendment guarantees an opportunity for effective cross-examination, not cross-examination that may be considered unlimited, unfocused, or irrelevant. Cain was afforded the opportunity to meaningfully cross-examine the witness.

The record reveals no constitutional violation. The witness's pending charge in question had lingered unresolved for nearly eight years prior to the events at issue. Cain offers no evidence that this aging matter in Ouachita exerted any influence on Straughter's testimony. Importantly, defense counsel was permitted to—and did—cross-examine the victim about her criminal history, including prior convictions and probationary status. The jury was provided with sufficient information to assess her credibility. The Confrontation Clause demands no more than the confrontation that did in fact take place here. This assignment of error is likewise without merit.

**Assignment of Error No. 3: Trial counsel rendered ineffective assistance by failing to move for a continuance after receiving the victim's criminal history on the morning of trial, by failing to object to the restriction on cross-examination regarding the Ouachita Parish pending charge, and by failing to preserve these issues for appellate review.**

Finally, Cain raises claims of ineffective assistance of counsel at the trial below, alleging failure to seek a continuance, failure to preserve objections, and failure to timely appeal. Such claims are ordinarily reserved for post-conviction proceedings, where a full evidentiary record may be developed under La. C. Cr. P. art. 930. This is not a mere technicality; it is a

4

practical necessity, as we are constrained to adjudicate claims only upon facts contained in the trial record.

Cain tacitly acknowledges this deficiency by requesting a remand for further proceedings. We agree with that well-established rule that it is preferable that such claims should be addressed, if at all, through post-conviction relief. Accordingly, this assignment of error is without merit.

## CONCLUSION

The jury in this matter heard the evidence, including the defendant's own admissions, and rendered its verdict, and the trial court applied the law as written. Accordingly, the convictions and sentences of Damion Cain are **affirmed**.

**AFFIRMED.**